DARREN D. WILLIAMS
REG. NO. 14168-006
FEDERAL PRISON CAMP
P.O. BOX 6000
SHERIDAN, OREGON  97378

Petitioner, in Pro Se

**FILED**

DEC 0 5 2005

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By_____Deputy

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Respondent, ) | District Court Criminal |
| vs. ) | Case No. CR-00-00108 JKS |
| DARREN W. WILLIAMS, ) | |
| Petitioner. ) | |

## MOTION TO GRANT RELIEF FROM JUDGMENT AND ORDER

## PURSUANT TO F.R.CIV.P., RULE 60(b)(1)(3)(4) AND (5)

### I.    INTRODUCTION

COMES  NOW  pro  se  Petitioner,  Darren  D.  Williams,
hereinafter referred to as Mr. Williams, hereby moves this Court
pursuant  to  the  Federal  Rules  of  Civil  Procedure,  Rule
60(b)(1)(3)(4)  and  (5)  in  order  to  obtain  review  or
reconsideration from this court's order denying his Title 28
U.S.C. § 2255 motion on December 3, 2004.

-1-

## II.    **PROCEDURAL HISTORY**

*    On February 24, 2000, Mr. Williams was seized by Anchorage Metro Drug Detectives and several DEA agents.

*    On July 5, 2000, Mr. Williams and John Makules were indicted by a Federal Grand Jury for conspiracy in relation to cocaine trafficking and related charges.

*    Mr. Williams was arrested November 15, 2000 on charges contained in the aforementioned indictment.

*    Mr. Williams retained attorney Allen Dayan to represent him on November 18, 2000.

*    On March 20, 2001, Mr. Williams entered into plea negotiations.

*    On May 21, 2001, Mr. Williams signed a Plea Agreement.

*    On May 31, 2001, Mr. Williams plead guilty to (Count 1) conspiracy in relation to cocaine trafficking.

*    August 7, 2001, Mr. Williams sought to substitute counsel in order to withdraw guilty plea.

*    Mr. Williams was sentenced to 135 months of federal imprisonment on June 12, 2002.

*    A notice of appeal was timely filed on June 18, 2002.

*    Mr. Williams moved to substitute appellant attorney Burke Wonnell in November 2002 and attorney Hugh Fleisher in May 2003.

*    Mr. Williams filed a Title 28 U.S.C. § 2255 motion on July 28, 2003.

*    This court denied Mr. Williams' § 2255 on December 3, 2004.

\*    A notice of appeal to the Ninth Circuit was filed on December 3, 2004.

\*    The C.O.A. was denied on June 7, 2005.

\*    A petition for certiorari was filed to the United States Supreme Court on behalf of Mr. Williams by the firm of Hagans Ahern and Webb on September 27, 2005.

\*    Mr. Williams now files this motion for relief under F.R.Civ.P. Rule 60(b) on or before December 2, 2005.

### III.    **THE OBJECTIVE OF A MOTION UNDER RULE 60(b)**

**A motion under Rule 60(b) and a petition for habeas have different objectives.**  The habeas motion under 28 U.S.C. § 2255 seeks to invalidate the federal court's judgment of conviction. As to the motion under **Rule 60(b)**, while it is 'undoubtedly a step on the road to the ultimate objective of invalidating the judgment of conviction,' it does not seek that relief. **It seeks only to vacate the federal court judgment dismissing the habeas petition.**  The grant of such a motion would not have the effect of invalidating the conviction.  It would merely reinstate the previously dismissed petition for habeas, opening the way for further proceedings seeking ultimately to vacate the conviction. The fact that the Rule 60(b) motion contemplates ultimately the vacating of the conviction is shared with every motion the petitioner might make in the course of pursing his habeas - motions to compel disclosure or quash the respondent's discovery demands, motions for extension of the time to answer the adversary's motion, motions to be provided with legal assistance, motions for summary rejection of the respondent's contentions.  All such motions, like the motion under Rule



60(b), seek to advance the ultimate objective of vacating the criminal conviction. But each seeks relief that is merely a step along the way. IN our view, **neither these motion,** nor the motion **under Rule 60(b)** that seeks to vacate the dismissal of the habeas petition, **should be deemed a second or successive** petition within the menaing of 28 U.S.C. § 2255.

See, Rodriguez v. Mitchell, 252 F.3d 191, 189 (2nd Cir. 2001).

## IV.    F.R.CIV.P. RULE 60(b) IS AN APPROPRIATE
## MECHANISM FOR BRINGING THESE CLAIMS

Rule 60(b) motion must be predicated on one of five narrow and specific grounds or on a sixth, more general ground:

> (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); **(3) fraud** (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) **the judgment is void;** (5) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, **or it is no longer equitable that the judgment should have prospective application; or (6)** any other reason justifying relief from the operation of the judgment.
>
> Fed.R.Civ. P. 60(b)(emphasis added).

The ninth Circuit Court of Appeals held in Hamilton v. Newland, 374 F.3d 822 (9th Cir. 2004) that : **"Rule 60(b) is the appropriate rule to invoke when one wishes a court to reconsider claims it has already denied.** See also, United States v. Washington, 394 F.3d 1152, at 1157 (9th Cir. 2005).



Mr. Williams, in his Rule 60(b) motion, is attacking the integrity of the habeas proceeding itself; he is not attacking his underlying sentence and conviction in the motion. Thus, the matters set forth in this motion are appropriately brought in a Rule 60(b) motion and do not constitute a "second or successive § 2255 petition. However, **a district court should grant relief pursuant to a Rule 60(b) motion when it determines in its sound discretion that substantial justice would be served.** Cincinnati Ins. Co. v. Byers, 151 F.3d 574, 578 (6th Cir. 1998).

A Rule 60(b) motion to reopen a habeas denial is barred when its "factual predicate deals primarily with the constitutionality of the underlying state conviction or sentence,: but is **permissible when it "deals primarily with some irregularity or procedural defect" of the habeas proceeding** itself. See Rodriquez v. Mitchell.

The crucial factor in determining whether a second attempt to receive review is "second or successive" is whether the claims have ever been adjudicated on the merits. See Slack v. McDaniel, 529 U.S. 473, 485-89, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)(a habeas petition which is filed after **an initial petition was dismissal without adjudication on the merits** for failure to exhaust state remedies is not a "second or successive petition"); also **Stewart v. Martinez-Villareal, 523 U.S. 637, 644-45, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998)**(the petitioner's claim that he was incompetent to be executed, raised for the

second time after his first claim was dismissed by the district court as premature, was not a "second or successive" application). This should hold true regardless of the label attached to that second attempt or the rule of federal procedure under which it si pursued. See <u>Carey v. Saffold</u>, 526 U.S. 214, 122 S.Ct. 2134, 2140, 153 L.Ed.2d 260 (2000) (looking to "how a state procedure functions, rather than the particular name that it bears," for purposes of the federal habeas statute).

In <u>Abdur'Rahman v. Bell</u>, 392 F.3d 174 (6th Cir. 2004), believing that Abdur'Rahman's Rule 60(b) motion should have been denied, the dissent stated: "Addur'Rahman was entitled to an adjudication; he got it [in his first § 2255 proceeding].

Similarly, Mr. Williams, in the case at bar, was entitled to an adjudication on the merits; however, because the district court never adjudicated on the merits, these matters are appropriately brought pursuant to Fed.R.Civ.P. Rule 60(b).

## SUMMARY OF THE ISSUE

## MOTIONS UNDER FEDERAL RULE  OF

## CIVIL PROCEDURE 60(b)

**PAGE**

A — "MISTAKE" AND LEGAL ERROR PREJUDICED
   MR. WILLIAMS' § 2255 PROCEEDING. . . . . . . . . . . .  8

B — MR. DAYAN PERPETRATED FRAUD ON THE COURT . . . . . . 14

C — OFFICERS OF THE COURT PERPETRATED
   FRAUD ON THE COURT. . . . . . . . . . . . . . . . . 20

D — VOID JUDGMENT DUE TO VIOLATION . . . . . . . . . . . 22

E — ORDER NO LONGER EQUITABLE. . . . . . . . . . . . . . 24


VERIFICATION . . . . . . . . . . . . . . . . . . . . . . 30

PROOF OF SERVICE. . . . . . . . . . . . . . . . . . . . 31

**GROUND A**       MISTAKE AND LEGAL ERROR PREJUDICED

MR. WILLIAMS' § 2255 PROCEEDING

The District Court should grant relief to Mr. Williams
under Fed.R.Civ.P., Rule 60(b)(1), in the category of "mistake",
because the Court's December 3, 2004, Order, denying Mr.
Williams' § 2255, constituted a "legal error" by basing its
decision on the wrong and inaccurate application of the law.

In its denial of Mr. Williams' § 2255 motion, the District
Court did not adjudicate on the merits of Mr. Williams' claims,
made in his § 2255 and original motion for reconsideration, that
he had been rendered ineffective assistance of counsel during
the plea process, with regards to the following matters:

### NON-VOLUNTARINESS OF PLEA

IN his pro se § 2255 motion, and original motion for
reconsideration, Mr. Williams claimed that counsel rendered him
ineffective assistance when, during the discussion of whether
to enter into the process of plea bargaining, **counsel promised
Mr. Williams a specific** sentence. Further, counsel suggested
that Mr. Williams, "do it (enter into plea negotiation) as soon
as possible." (See Mr. Williams' pro se July 28, 2003, motion
under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence
by a Person in Federal Custody, Ground F, subsection F4, page

-8-

16).   Mr.  Williams  argued  that  his  sentence  was  **involuntary**
**because  it  was  induced  by  his  counsel's  m**isrepresentation  **of**
**what  his**  sentence  in  fact  **would  be.**   (See  also  Mr.  Williams'
motion  for  reconsideration  Docket  #174  on  November  25,  2003).
In  denying  Mr.  Williams'  § 2255  motion,  the  District  Court
neither  commented  on  nor  adjudicated  this  claim.   (See December
2,  2004   Order  denying  Mr.  Williams'  § 2255).   **This**  constituted
**a  legal**  error.


      The  Ninth  Circuit  has  long  held  that  a  defendant  whose  plea
was  induced  by  promises  or  misrepresentations  by  counsel,  was
entitled  to  relief.   In  <u>Chizen v. Hunter</u>,  809  F.2d  560,  562  (9th
Cir.  1986);  citing,  <u>McAleney v. United States</u>,  539  F.2d  282  (1st
cir.  1976),  defense  counsel  told  his  client  that  the  prosecutor
had  agreed  to  recommend  a  light  sentence.   In   fact,   the
prosecutor  had  only  given  his  personal  opinion  that  the
defendant  would  receive  a  light  sentence;  he  never  promised  to
give  a  recommendation.   In  granting  the  motion  to  withdraw  the
plea,  the  First  Circuit  held:   "[the  defendant]  **was  entitled**
**to  credit  his  attorney's  r**epresentation  **as  to  the  fact  of  such**
**an  agreement,  and  t**o  **rely  on  it;  and  if  his  guilty  plea  was  in**
**fact  induced  by  such  a  r**epresentation,  we  agree  with  the
District  Court  that  **relief  is  in  order."**   <u>Id</u>  at  284;   see
generally  <u>Blackledge v. Allison</u>,  431  U.S.  63,  97  S.Ct.  1621,
52  L.Ed.2d  136  (1977).



The issue on appeal in Mr. Williams' § 2255, regarding voluntariness of plea, is whether Mr. Williams' plea was involuntary because it was based on the misrepresentation by Mr. William's counsel that the prosecutor had agreed to terms for certain information, and that Mr. Williams would receive a specific sentence.

The long-standing test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Hill v. Lockhart, 474 U.S. _____, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). **"A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary action is void."** Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962).

Mr. Williams did not alleged, in his § 2255 motion and original motion for reconsideration, merely that his counsel erroneously predicted the favorable consequences of a guilty plea; that of course, would not entitle him to relief. See Blackledge v. Allison. Rather Mr. Williams introduced to the District Court **Exhibit B,** which is a tape recorded transcript of conversation between the prosecutor, Mr. Williams, and his counsel. **This uncontroverted transcript supports Mr. Williams'** claim that counsel told Mr. Williams to "give the government the Mexican" and he would get 1/2 off 135 months and that the prosecutor said "okay." This transcript also indicate that counsel suggested Mr. Williams "do this now," and that if he

didn't give them a certain person he "would do Hatten's (suspected drug dealer) time" which is life. This threat was made 3 days before trial. The prosecutor attested that Exhibit B transcript was accurate, and that he never discussed the Mexican with Mr. Williams until after Mr. Williams was jailed following the Rule 11 Hearing. This would indicate that Mr. Williams' counsel lied to him about the prosecutor "okaying" a specific sentence for information on the Mexican.

## DEFICIENT PERFORMANCE

Mr. Dayan's performance as Mr. Williams' counsel was deficient in that if fell below an objective standard of reasonableness according to Ninth Circuit rulings. During the decision whether to plead guilty, <u>United States v. Fuller</u>, 914 F.2d 993 (9th Cir. 1991); and during the process (critical stage) of plea bargaining . . . , <u>U.S. v. Leonti</u>, 326 F.3d 1111, 1117 (9th Cir. 2003), mischaracterizations without more could constitute a fair and just reason to withdraw plea. See <u>U.S. V. Davis</u>, 410 F.3d 1122, 1125 (9th Cir. 2005). Mr. Dayan provided ineffective assistance of counsel when he made misrepresentations, promises and threats to Mr. Williams at a critical stage.

## PREJUDICE

Mr. Dayan' performance prejudiced Mr. Williams' in that

-11-

the 135 months sentence he received constituted prejudice under the second prong of <u>Strickland v. Washington</u>, 466 U.S. 667, 668, 104 S.Ct. 2052, 80 L.Ed.2d    (1984).  Even though the District Court sentenced Mr. Williams at the bottom of the guideline range; thus, Mr. Dayan's purported promise and representations resulted in a sentence that was (204 percent) more than the 63 month sentence promised to Mr. Williams.  Additionally, the 135 months produced at sentencing could have (exposed) been 276% greater had the court imposed the sentence at the top of the guidelines range (188 months) instead of at the bottom.  See <u>U.S. v. Herrera</u>, 412 F.3d 577, 581 (5th Cir. 2005) quoting <u>Glover v. United States</u>, 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001).  ("Any amount of jail time has Sixth Amendment significance, which constitute prejudice for purposes of the <u>Strickland</u> analysis').

**Mr. Williams' Rule 60(b)(1)** motion asserts a claim of "**legal error**" **that** transpired **during the course of his §** 2255 **proceeding.**  Mr. Williams' § 2255 motion and motion for reconsideration alleged facts that were proven by the testimony, records and evidence of the § 2255 proceeding.  Noteworthy, the facts and evidence in this case clearly proves that (1) Mr. Dayan's performance was deficient; (2) Mr. Williams suffered prejudice (according to <u>Strickland</u>); and, (3) prejudice presumed because of a structural error (by counsel's absence during a critical stage).  However, the District Court failed to recognize and apply the correct legal standard in its order to deny Mr. Williams' § 2255.  Application of the wrong legal



standard constitute an abuse of discretion.  See <u>Koon v. United States</u>, 518 U.S. 81, 100, 116 S.CT. 2035, 135 L.Ed.2d 392 (1996) ("A District Court by definition abuses its discretion when it makes an error of law.") citations omitted.  A District Court abuse its discretion when its decision is based on the wrong or inaccurate view of the law.  <u>U.S. v. Garcia</u>, 401 F.3d 1008, 1011 (9th Cir. 2005).  Rule 60(b)(1) warrants Mr. Williams' relief under the category of "mistake" because of a legal error in that the court failed to apply the laws of <u>Chizen</u>, <u>McAleney</u>, <u>Leonti</u>, or <u>Strickland</u> correctly.

### CONCLUSION ON THIS ISSUE

Petitioner request that the Court grants relief pursuant to Federal Rules of Civil Procedure Rule 60(b)(1).

## MR DAYAN PERPETRATED A FRAUD ON THE COURT

Under Rule 60(b)(3), a District Court may relieve a party from a final judgment for "fraud" and "fraud on the court." Fed.R.Civ.P. 60(b)(3). To prevail on a Rule 60(b)(3) motion, a movant must show that the conduct complained of prevented the moving party from fully and fairly presenting his case. Mr. Williams asserts that his former defense attorney, Allen Dayan, misrepresented facts at Mr. Williams' August 6, 2004 § 2255 evidentiary hearing, which prevented Mr. Williams from fully and fairly presenting his case and resulted in the court ruling against Mr. Williams' § 2255 motion.

See Davenport Recyclong Associates v. C.I.R., 220 F.3d 1255, 1262 (11th Cir. 2000)("fraud on the court must involve an unconscionable plan or scheme which is designed to improperly influence the court in its decision, preventing the opposing party from fully and fairly presenting his case."); see also Lattrell v. United States, 644 F.2d 1274, 1276 (9th Cir. 1980); Keys v. Dunbar, 405 F.2d 955, 957-58 (9th Cir. 1969)(per curiam). Court possess the inherent power to vacate or amend a judgment obtained by fraud on the court, Toscano v. CIR, 441 F.2d 930, 933 (9th Cir. 1971), but that power is narrowly construed, applying only to fraud that defiles the court or is perpetrated by officers of the court. When we conclude that the interity of the judicial process has been harmed . . . we not only can act, we should. See England v. Doyle, 281 F.2d 304, 309, (9th Cir. 1960); Levander v. Prober, 180 F.3d 1114, 1119 (9th Cir. 1999).

-14-



In order to recognize attorney Dayan's misrepresentation to the court, we must first examine the evidence presented at the § 2255 evidentiary hearing, about which Mr. Dayan was testifying. A copy of this evidence, identified as Exhibit B, ~~accompanies this motion~~ and is incorporated herein by reference.

### TELEPHONE CONVERSATION

Exhibit B is a transcript of a tape-recorded conversation that took place on March 20, 2001. Mr. Williams and his retained defense attorney, Mr. Dayan, were present in Mr. Dayan's office speaking to AUSA Mr. Rosenbaum via the speaker phone. Mr. Rosebaum clearly indicates that he is interested in information regarding a drug source named "Hatten" (a.k.a. "C-Money"), yet he can make no guarantees regarding the amount of sentence reduction Mr. Williams might receive for cooperating. He is further concerned that Mr. Williams has been unable to contact Hatten. During the conversation, Mr. Dayan places Mr. Rosenbaum on hold in order to speak privately with Mr. Williams. Mr. Dayan urges Mr. Williams to proffer his information as soon as possible. Mr. Williams tells Mr. Dayan that he has attempted to contact Hatten yet there is no way for Williams to speak with Hatten. Mr. Williams tells Mr. Dayan that they need to inform Mr. Rosenbaum of this fact. Mr. Dayan tells Mr. Williams that he can simply substitute information on other individuals who are drug sources in order to satisfy the prosecutor and qualify for a sentence reduction for cooperation. Mr. Williams claims uncertainty regarding the

-15-

number of sources he might be able to provide and the amount
of drugs that might be involved. Mr. Dayan then speaks
privately with Mr. Rosenbaum for several minutes before ending
the phone call. After hanging up, Mr. Dayan speaks with Mr.
Williams about setting a time to conduct the proffer session.
When Mr. Williams starts to question Mr. Dayan about the
upcoming proffer, Mr. Dayan begins to coach his client, telling
him specifically that he will not be providing them (the
government) with information on Hatten, but will instead be
trading them someone else, going on to indicate that "he said
okay," implying that Mr. Rosenbaum had agreed to accept this
alternate information. Mr. Dayan then states that, in exchange
for this alternate information, Mr. Williams will get "half of
about 135 (months), okay?" Mr. Dayan goes on to imply that Mr.
Williams' sentence might even improve more if he can actually
deliver Hatten. If not, Mr. Dayan indicates that Williams will
do approximately 65-68 months, less good time. Mr. Dayan then
warns Williams that if he fails to give the government all the
information he has on Hatten, Mr. Williams will serve addition
time for the crimes Hatten committed. Mr. Williams indicates
that the best he can do is make a good-faith effort. Mr. Dayan
tells Williams that it will help his case as long as Williams
"give(s) them (the government) a good effort," implying again
that Mr. Dayan has already reached an agreement with the
government.

-16-

Now we must examine Mr. Dayan's testimony regarding the above conversation given during Mr. Williams' August 6, 2004 § 2255 evidentiary hearing. Mr. Dayan was asked to read lines twenty-two through twenty-four from the transcript of the March 20, 2001 telephone call, which reads:

"You're not doing . . . Hatten, you say I'm going to trade someone else, and he said okay." (See pg. 49 or Exhibit B).

Mr. Dayan was then asked to identify the party to whom he was referring when he told Mr. Williams "he said okay." Although it is clear to anyone reading the transcript that Mr. Dayan was quoting Mr. Rosenbaum as having said "okay" to trading information on a different suspect, Mr. Dayan answered evasively when confronted with the question, claiming he did not know of whom he had spoken. He then sidestepped the issue when asked if anyone other than himself, Mr. Rosenbaum, or Mr. Williams was party to the conversation.

Careful examination of the transcript contained in Exhibit B and Mr. Dayan's testimony at the § 2255 evidentiary hearing clearly indicates that Mr. Dayan misrepresented a nonexistent agreement with the government to Mr. Williams to induce him to participate in a proffer and to plead guilty. When confronted at the evidentiary hearing with Exhibit B, Mr. Dyan then misled the court by giving evasive ambiguous nonanswers that contradicted the evidence presented.

-17-



Uncontroverted evidence adduced at Mr. Williams' August 6, 2004 evidentiary hearing confirms that Mr. Dayan made the misrepresentation to Mr. Williams as an inducement to enter into plea negotiations under the pretense that Mr. Rosebaum said this plan would be okay. (Mr. Rosebaum attested at the evidentiary hearing, that he did not discuss this plan with Mr. Dayan.) Exhibit B is a conversation that included only Mr. Dayan, Mr. Rosenbaum, and Mr. Williams. This Exhibit does not indicated Mr. Rosenbaum okaying a sentence or terms of a proffer. What the Exhibit does indicate is Mr. Dayan representing terms and facts that Mr. Rosenbaum did not agree to. Mr. Dayan's deception was repeated at Mr. Williams' § 2255 evidentiary hearing. This deception affected the integrity of the § 2255 proceeding and thus constituted fraud on the court.

As the Supreme Court observed more than fifty years ago, "[t]ruth needs no disguise." <u>Hazel-Atlas</u>, 322 U.S. at 247, 64 S.Ct. 997. There can be no question here but that the testimony of Mr. Dayan amounted to a fraud on Mr. Williams' § 2255 proceeding. Exhibit B (transcript) and Mr. Rosenbaum's testimony affirms Mr. Williams argument of such. Mr. Dayan's testimony is noteworthy not only because it defiled the sanctity of the court and the confidence of all future litigants, but also because it violated Mr. Williams' right to a full, fair and just § 2255 hearing. "What did occur was clearly designed to defile the court itself, and there is no question that it was carried out by an officer of the court." <u>Toscano</u>, 441 F.2d

at 993. Such fraud corrupts the adversarial nature of the proceeding, and the ability of the trial court to judge impartially. See England, 281 F.2d 304.

Prejudice is not an element of fraud on the court. Hazel-Atlas, 322 U.S. at 238, 64 S.Ct. 997; Pumphrey v. K.W. Thompson Tool Co., 62 F.3d 1128, 1132-33 (9th Cir. 1995). Fraud on the court occurs when teh misconduct harms the integrity of the judicial process, regardless of whether the opposing party is prejudiced. Alexander v. Robertson, 882 F.2d 421, 424 (9th Cir. 1989). Furthermore, the perpetrator of the fraud should not be allowed to dispute the effectiveness of the fraud after the fact. Hazel-Atlas, 332 U.S. at 247, 64 S.Ct. 997; Dixon v. C.I.R., 316 F.3d 1041, 1046 (9th Cir. 2003).

## CONCLUSION ON THIS ISSUE

Mr. Williams' evidentiary hearing was infected by a fraud on the court plainly designed to corrupt the legitimacy of the truth seeking process. Mr. Dayan purposely misled the court through his testimony, for to tell the truth would have been an indictment of his earlier misconduct. See Levander, 180 F.3d at 1118 ("[T]ampering with the administration of justice in this manner involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public."). As such, Mr. Williams has clearly and convincingly demonstrated fraud on the court and is entitled to relief, this according to the F.R.Civ.P. Rule 60(b)(3).

-19-



## WHETHER ATTORNEY BURKE WONNELL AND/OR
## AUSA MARK ROSENBAUM PERPETRATED FRAUD UPON THE COURT

Under Rule 60(b)(3), a District Court may relieve a party from a final judgment for "fraud" and "fraud on the court." Fed.R.Civ.P. 60(b)(3). To prevail on a Rule 60(b)(3) motion, a movant must show that the conduct complained of prevented the moving party from fully and fairly presenting his case. Defense attorney Burke Wonnell and AUSA Mark Rosenbaum, in their testimony at Mr. Williams' August 6, 2004, § 2255 evidentiary hearing, offered deceiving and misleading testimony regarding what was requred of Mr. Williams by the government to qualify for a sentence reduction under 5K1.1. Their testimony prevented Mr. Williams from fully and fairly presenting his case.

Defense attorney Burke Wonnell was appointed by the court to assist Mr. Williams with a motion to withdraw his guilty plea. Mr. Williams had fired his previous attorney, Allen Dayan, after learning that Mr. Dayan had misrepresented the government's plea agreement offer to him in an effort to compel him to proffer information and plead guilty. Mr. Wonnell testified at the § 2255 evidentiary hearing that following his appointment as Williams' attorney, "Mark [Rosenbaum] wanted Williams to give information on Hatten's sources to earn the 5K1.1 [sentence reduction], TR 2-14. However, during the same hearing, AUSA Rosenbaum attested, TR 2-134, that "Mr. Williams"

usefulness to us as a witness was pretty much erased."
Rosenbaum also stated, TR 2-142, that "there was not an
opportunity to meet again once Williams entered a plea.  It
wouldn't have made sense because he had already stepped on his
toes . . . his value to us as a witness was gone.  I told Allen
[Dayan[ to not expect anything in terms of a 5K1.1 motion."
This last statement indicates that Mr. Rosenbaum had represented
to Williams' defense attorney Dayan that a sentence reduction
recommendation would not be forthcoming, and that this statement
was made immediately following the ~~guilty plea~~ *Proffer sessions* while Dayan was
still representing Williams.  Mr. Rosenbaum's statement that
the government had no intention of making a 5K1.1 motion after
Williams' submitted his guilty plea, indicates that Williams
was duped into pleading  guilty by the government since Williams
based his decision to enter a plea of guilty upon the
government's promise of a 5k1.1 motion.  Furthermore, if the
~~ogvernmetn~~ *government* was telling attorney Dayan that no 5K1.1 motion would
be forthcomiing, as Mr. Rosenbaum contends, then why would
attorney Wonnell claim that the government was offering a 5K1.1
motion to Williams in exchange for cooperation weeks later?
Either Wonnell or Rosenbaum misrepresented the facts before the
court at the evidentiary hearing, of if both parties testified
truthfully, then AUSA Rosenbaum enticed Williams to plead guilty
by making a plea agreement with Williams that he never intended
to fulfill.

If one should decide that either Mr. Wonnell or Mr. Rosenbaum gave false testimony at the evidentiary hearing, then this deception affected the integrity of the § 2255 proceeding and thus constituted fraud on the court. Courts possess the inherent power to vacae or amend a judgment obtained by fraud on the court, Toscano v. CIR, 441 F.2d 930, 933 (9th Cir. 1971), but that power is narrowly construed, applying only fraud that defiles the court or is perpetrated by officers of the court. When we conclude that the integrity of the judicial process has been harmed . . . we not only can act, we should. See England v. doyle, 281± F.2d 304, 309 (9th Cir. 1960); Levander v. Probver, 180 F.3d 1114, 1119 (9th Cir. 1999). Such fraud corrupts the adversarial nature of the proceeding and the ability of the trial court to judge impartiality. See England, 281 F.2d 304.

If one decides that both Wonnell and Rosenbaum testified truthfully at the § 2255 evidentiary hearing, then Mr. Rosenbaum has effectively admitted that he entered into a plea agreement with Mr. Wiliams that he had no intention of fulfilling.

Where a defendant is misled as to the consequences of his plea, it render the plea involuntary. Williams v. Taylor, 529 U.S. 420, 431-33, 437-38, 120 S.Ct. 1479, 146 L.Ed. 2d 435 (2000).

-21(A) -

Judge Singleton relied heavily on the statements of the officers of the court (Wonnell & Rosenbaum) to make his decision regarding Williams' § 2255 motion. See Order pages 9 and 10. Judge Singleton ruled that after Wonnell was substituted, "the government was still willing to listen to Williams", implying that he still retained the opportunity to earn a 5k-1.1 sentence reduction. Mr. Rosenbaum's testimony in the proceeding directly contradicts the Judge's conclusion, indicating that the government would not be willing to make a 5k-1.1 motion following Williams' plea, no matter what information he might have provided.

## Conclusion

Whether one concludes that the testimony at Mr. Williams' § 2255 evidentiary hearing was tainted or not, the testimony clearly indicates that Mr. Williams is entitled to relief under his § 2255 motion. Fraud on the court would warrant ▬▬▬▬▬▬▬▬▬▬ vacating the § 2255 judgement under F.R. Civ. P. Rule 60 (b)(3). ▬▬▬▬

▬▬▬▬ If the government in fact breached Williams' plea agreement, the § 2255 motion should have been accepted on that ground ▬▬▬▬▬▬ that the plea was involuntary.

Either way, ▬▬ ▬▬▬ denying Williams' § 2255 motion was a due process violation warranting reversal by the court. The integrity of the § 2255 proceeding was affected by a fraud on the court.

21 (b)



**WHETHER THE COURT'S ORDER DENYING MR. WILLIAMS'
§ 2255 IS VOID DUE TO A VIOLATION OF F.R.CIV.P.
RULE 4(a) OF THE LAW GOVERNING § 2255 PROCEEDINGS**

Mr. Williams contends that the judgment denying his § 2255 should be considered void because Judge Singleton had no authority to preside over this matter. Because this order affects the integrity of the § 2255 proceeding, Rule 60(b)(4) of the Federal Rules of Civil Procedure warrants relief.

The Honorable James Fitzgerald presided over Mr. Williams' Rule 11 Hearing and accepted the defendant's plea of guilty. Rule 4(a) of the Rules Governing § 2255 Proceedings requires that the § 2255 hearing must be heard by the same judge "who was in charge of that part of the proceedings being attacked by the movant." Since the § 2255 motion specifically attacked the entry of the guilty plea, Judge Fitzgerald should have been the one to rule on the § 2255, not Judge Singleton. Referring to Rule 4 of the Federal Rules Governing Section 2255 Proceedings, the Advisory Committee Notes clearly point out the logic and justification for having the judge who presided over the original proceeding hear thee § 2255 and decide the merits of the motion:

> "The reasoning for this was first noted in <u>Carvell v. United States</u>, 173 F.2d 348-349 (4th Cir. 1949):
> . . . it is highly desirable in such cases that the [2255] motions be [heard] by the judge who is familiar with the facts and circumstances surrounding the trial, [as he] is consequently not likely to be misled by false allegations as to what occurred."

-22-



Judge Singleton's decision to rule on Williams' § 2255 motion in lieu of Judge Fitzgerald becomes more problematic when one considers that Judge Singleton may have been guilty of judicial misconduct during the original plea colloquy when he arranged for an alternate judge to preside over the colloquy in order to avoid having to disclose that he had dismissed all charges against Williams' only codefendant, which left Williams unknowingly pleading guilty to a conspiracy comprised of only one individual. Judge Singleton's failure to act on his personal knowledge that no conspiracy remained without the existence of co-conspirators established his complicity in a miscarriage of justice, disqualifying Judge Singleton from presiding over any future motions related to this case and renders all judgments made by him following the plea colloquy void. A voided judgment is a legal nullification which permits the court considering a Motion to Vacate no discretion in determining whether the motion should be set aside. Hence, Judge Singleton is disqualified from presiding over Mr. Williams' § 2255 hearing and his judgment in the matter is void, making it necessary that the Court vacate the § 2255 ruling.

Petitioner request that the Court grant relief pursuant to Federal Rule of Civil Procedure Rule 60(b)(4).



## THE JUDGMENT DENYING MR. WILLIAMS' §2255 IS

## NO LONGER EQUITABLE UNDER RULE 60(b)(5)

The district court failed to adjudicate on the merits and facts that were argued, presented and adduced at Mr. Williams' evidentiary hearing on May 8, 2004 and August 6, 2004, which indicated that Mr. Williams was denied counsel during critical stages of the proceedings, and that the absence of counsel during those critical stages cause a structural error.

Federal Rules of Criminal Procedure Rule 60(b)(5) allows for relief when prospective application of a judgment is no longer equitable. However, a party seeking relief of a judgment bears the burden of establishing that a significant change either in factual conditions or in law warrants revision of the order. This case presents a significant refinement in the law.

Mr. Williams' § 2255 was denied, just 11 days, prior to the Ninth Circuit Court of Appeals' published ruling in U.S. v. Hamilton, 391 F.3d 1066 (9th Cir. Dec. 13, 2004). The Ninth Circuit's ruling in Hamilton held: "counsel's absence during a critical stage of a proceeding constitutes a structural error . . . and that prejudice is presumed." **The Hamilton ruling presents a significant change in the law which affects the December 3, 2004 Order denying Mr. Williams' § 2255 in that the** denial is no longer fair and just and no longer have an expected application in light of **Hamilton**. Hamilton presents extraordinary circumstances sufficient to warrant relief.

-24-

The Supreme Court has indicated that a "critical stage" denotes "a step of a criminal proceeding, such as an arraignment, that holds significant consequences for the accused." <u>Bell v. Cone</u>, 535 U.S. 685, 695-96, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). Recognizing that the "assistance of counsel" guaranteed by the Sixth Amendment "would be less than meaningful if it were limited to the formal trial itself," <u>United States v. Ash</u>, 413 U.S. 300, 93 S.CT. 2568, 37 L.Ed.2d 619 (1973), The Supreme Court has made clear that criminal defendants have a right to counsel at all "critical stages" of criminal proceedings. <u>United States v. Wade</u>, 388 U.S. 218, 224, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Also, the Supreme Court held that, the right to counsel is among those "constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error," <u>Chappman v. California</u>, 382 U.S. 18, 23 n.5, 87 S.Ct. 826, 17 L.Ed.2d 705 (1967).

Evidentiary hearings for the § 2255 were conducted on March 8, 2004 and August 6, 2004 relating to Mr. Williams' claims that counsel rendered ineffective assistance during the process of plea bargaining and during his decision to plead guilty. At the August 6, 2004 evidentiary hearing, Mr. Williams' counsel, Mr. Dayan testified as to what he believed his role was as Mr. Williams' counsel. His statements indicated a complete lack

of advocacy on behalf of Mr. Williams.  Mr. Dayan attested, on August 6, 2004, that he did not attend two proffer sessions, even though he knew that the prosecutor and several DEA agents would be questioning Mr. Williams without the aid of counsel. By failing to be present, Mr. Dayan had no idea what was asked at the two meetings or how Mr. Williams responded.  Mr. Dayan attested he did nothing to establish a record of the meetings. He stated that he did not think it was his job, or that it was important, to attend the proffer sessions to advise Mr. Williams or faciliate communication with the government.  Mr. Williams testified that he was nervous, scared, and that the sessions were hostile and argumentative.  Mr. Dayan attested that he didn't believe Mr. Williams was being truthful or cooperating. Even then, he did not attend the second and third meetings. Mr. Dayan attested that, if Mr. Williams needed him, Mr. Williams could have called him on the telephone.  Astoundingly, Mr. Dayan attested during the evidentiary hearing that it was not his job to do anything possible to assist Mr. Williams in obtaining a downward departure while representing him during the plea process.

U.S. v. Hamilton, 391 F.3d 1066, 1070 (9th Cir. 2004) recognizes:

> Among the stages of prosecution deemed "critical for Sixth Amendment purpose" are, for example, arraignments, Hamilton v. Alabama, 368 U.S. 52, 53-55, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961); post-indictment identification lineups, Wade, 388 U.S. 236-37, 87 S.Ct. 1926; sentencing, Mempa v. Rhay, 389 U.S. 128, 137, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); court-ordered psychiatric examinations to determine competency to stand trial and future dangerousness,

-26-

Estelle v. Smith, 451 U.S. 454, 457-71, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); the decision whether to plead guilty, **United States v. Fuller, 941 F.2d 993, 995 (9th Cir. 1991)**, and the process of plea bargaining and period of defendant's potential cooperation with the government, United States v. Leonti, 326 F.3d 1111, 1117 (9th Cir. 2003).

It follows that evidence argued and adduced at Mr. Williams' evidentiary hearing, where relief was sought on the basis that defendant's [Mr. Williams'] Sixth Amendment right to counsel was violated when counsel failed to assist him during the critical stage of plea bargaining, establishes that the meetings Mr. Williams attended without counsel were a critical stage of his prosecution according to United States v. Leonti, 326 F.3d 1111, 1117 (9th Cir. 2003). Therefore, when the (AUSA) prosecutor and DEA agents questioned Mr. Williams about criminal drug dealing activities, **Mr. Williams' Sixth Amendment rights were implicated. The absence of Mr. Williams' counsel during the two meetings with the prosecutor** and DEA agents constituted a denial of counsel during a critical stage of the proceedings. See U.S. v. Hamilton, 391 F.3d 1066 (9th Cir. 2004), related to structural error of proceedings.

Mr. Williams notes that **the United States Supreme Court has "uniformly found constitutional error without any showing of prejudice when counsel was** either totally **absent, or prevented** from assisting the accused, **during the a critical stage** of the proceeding." See French v. Jones, 332 F.3d 430, 436 (6th Cir. 2003), quoting United States v. Cronic, 466 U.S. 648, 659 N.25, 104 S.Ct. **Where counsel is absent during a**

-27-

critical stage, the defendant need not show prejudice. Rather, prejudice is presumed, "because the adversary process has become presumptively unreliable." Roe v. Flores-Ortega, 528 U.S. 470, 483, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), quoting Cronic, 466 U.S. at 659, 104 S.Ct. 2039. See also, U.S. v. Hamilton, 391 F.3d at 1070. Nor does harmless error analysis apply. As previously observed, teh Sixth Amendment guarantee applies to all "critical" stages of the proceeding. Wade, 388 U.S. at 244, 87 S.Ct. 1926. Thus, the absence of counsel during a critical stage of criminal proceeding is precisely the type of "structural defect" to which no harmless-error analysis can be applied. Id. at 1071.

Mr. Williams' case is indistinguishable from Plumlee v. Del Papa, 9th Cir. No. 04-15101, 10/18/05, where the Ninth Circuit reported that the federal courts are nearly unanimous in their holding that "a . . . breakdown in communication can prevent the attorney from serving as the type of advocate guaranteed by the Sixth Amendment," as interpreted in such cases as Anders v. California, 386 U.S. 738 (1967), and United STates v. Cronic, 466 U.S. 648 (1984). The Plumlee v. Del Papa Court stressed that "the circumstances in this case were extraordinary," and that "the counsel provided to the petitioner was tantamount to having no counsel at all." The court concluded that the petitioner was not required to show prejudice to establish his ineffective assistance claim. Like Plumlee v. Del Papa, Mr. Williams has proven in his § 2255 proceeding

-28-



that Mr. Dayan provided ineffective assistance that caused prejudice to his case.

However, the District Court has failed to adjudicate on the merits, facts, and evidence presented or adduced at Mr. Williams' § 2255 proceedings. The District Court abused its discretion by basing its decision on the wrong or inaccurate view of the law. See <u>U.S. v. Garcia</u>, 401 F.3d 1008, 1011 (9th Cir. 2005).

### CONCLUSION ON THIS ARUGMENT

Mr. Williams' § 2255 generally relied on the law of <u>Leonti</u>, which established that the critical stage of a proceeding include the plea bargaining process. The evidence and testimony adduced at Mr. Williams' evidentiary hearing indicated Mr. Dayan's absence during several hostile and argumentative proffer sessions, where Mr. Williams was questioned by Mr. Rosenbaum and several agents. According to <u>Hamilton</u>, Mr. Williams was prejudiced. Because Mr. Williams is not attacking his conviction or sentence, only the § 2255 proceeding, relief under Federal Rules of Criminal Procedure Rule 60(b)(5) is warranted.

## CONCLUSION ON ALL ISSUES

\*    As stated by Justice Breyer in his concurring opinion in Gonzalez v. Crosby, 545 U.S. _____, 162 L.Ed.2d 480, 125 S.Ct. _____, decided on June 23, 2005, a proper Rule 60(b) motion "attacks, not the substance of the Federal Court's resolution of a claim on the merits, but some defect in the integrity of the Federal Habeas proceedings." Id. (citing to majority opinion at 162 L.Ed.2d 493).

\*    For the foregoing reasons this Court should re-open Mr. Williams' 28 U.S.C. § 2255 motion pursuant to Rule 60(b), or in the alternative grant the § 2255 motion.

## VERIFICATION

I, Darren D. Williams, hereby verify, under penalties of perjury, that the stated facts found in my Motion for Relief from Judgment or Order pursuant to F.R.Civ.P. 60(b) are true and correct to the best of my knowledge and belief.

Dated this 1st day of December, 2005.

Respectfully submitted,

Darren D. Williams
Reg. No. 14168-006
Federal Prison Camp
P.O. Box 6000
Sheridan, OR  97378

-30-



DARREN D. **WILLIAMS**
REG. NO. 14168-006
FEDERAL PRISON CAMP
P.O. BOX 6000
SHERIDAN, OR  97378


P R O O F   O F   S E R V I C E


   * I, Darren D. Williams, declare pursuant to Title 28 U.S.C. § 1746, that a true and correct copy of my Motion for Relief from Judgment or Order Pursuant to F.R.Civ.P. 60(b), has been served as dated and deposited in the prison's designed system for legal mail [FRAP 25 (a)(2)(C)] in a sealed envelope with sufficient U.S. postage affixed and properly addressed to:


OFFICE OF THE U.S. ATTORNEY
DISTRICT OF ALASKA
222 WEST 7TH AVE.
ANCHORAGE, AK   99513


Dated this 1st day of December, 2005.


Respectfully submitted,

*Darren Williams*
_____
Darren D. Williams