EXHIBIT A

DOCUMENT 230

FILED
DEC 0 3 2004
UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

RECEIVED
JAN 3 0 2006
CLERK, U.S. DISTRICT COURT
ANCHORAGE, ALASKA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | Case No. A00-0108 CR (JKS) |
| vs. | ORDER |
| DARREN D. WILLIAMS, | |
| Defendant. | |

## BACKGROUND

On May 31, 2001, Darren Williams plead guilty and was convicted of certain drug offenses. Docket No. 101 (Trans.).[1] Sentencing was scheduled for August 17, 2001.[2] On August 9, 2001, Williams sought court approval to discharge his retained attorney, Mr. Allen Dayan,[3] and have a

---

[1] Williams entered his plea before the Honorable James M. Fitzgerald. The Rule 11 interview was extensive. The trial date had been continued a number of times and was scheduled to begin on June 4, 2001.

[2] Imposition of sentence was continued many times. Williams filed a motion to continue sentencing to September 21, 2001 that was granted. Docket Nos. 96; 97. Sentencing was continued again to December 21, 2001, and again to February 8, 2002, and yet again to April 19, 2002. Docket Nos. 112; 115; 116. At a hearing on whether to substitute counsel, sentencing was reset again to May 20, 2002. Docket No. 121. Following yet another rescheduling, imposition of sentence occurred on June 12, 2002. Docket No. 131.

[3] While a party has an absolute right to fire a retained attorney and hire a new attorney provided he does so expeditiously, the Court was concerned about the timing of Williams's actions. It also became clear at the hearing that Williams claimed that after paying Dayan he had no money left to hire a second attorney. The Court was not aware until it reviewed the transcripts of the

1

 

new attorney appointed for him at government expense off of the CJA panel list. *See* Docket No. 104. The motion was granted, and T. Burke Wonnell was appointed to represent Williams. Docket No. 109. Williams subsequently sought to replace Wonnell, arguing a breakdown in communication. This Court appointed interim counsel, John Pharr, to assist Williams in arguing for substitution of counsel. Docket No. 118. The Court heard testimony from Williams and Wonnell in an *ex parte* hearing.[4] The Court denied the motion to substitute counsel, finding it without merit. The Court concluded that there had been no break down in communication and was satisfied that Wonnell was ready, willing, and able to represent Williams. Docket No. 210. It appeared to the Court that Williams wished to move to set aside his plea on the ground that he had been denied the opportunity to bring certain motions. Wonnell was willing to bring a motion to set aside Williams's plea. The Court indicated that a motion to set aside the plea would be entertained. *Id.*[5]

---

hearing before Judge Roberts that Williams testified that he had offered Phillip Weidner $20,000 to take over his representation. Thus, the Court was of the view that Williams could not (or would not) pay to hire a new attorney and would need an attorney appointed off the CJA panel list. The Federal Defender had represented a co-defendant and therefore could not be appointed to represent Williams. Typically when a party retains counsel and then runs out of money, this Court simply appoints the formerly retained attorney to assure continuity of counsel. This was not done in this case because Williams was repudiating his plea and there was a risk that Dayan and Williams would be testifying as adversaries at a hearing to withdraw plea. Docket No. 119 (Trans.). The Court hereby orders this transcript unsealed.

[4] At the hearing to substitute Williams voiced the complaint that his plea was "coerced" but made it clear that the coercion he was complaining about was the failure by Dayan initially and Wonnell ultimately to bring motions that Williams wanted brought and that Williams was convinced would have provided him a "get out of jail card." Having concluded that there was no break down in communication, but simply a disagreement about that part of trial strategy and tactics related to motion practice, this Court denied the motion to substitute counsel. Docket No. 210 (Trans.). The Court hereby orders this transcript unsealed.

[5] The Court knew from the hearing at which Dayan was discharged and from the later hearing at which Williams sought to discharge Wonnell that Williams had gotten bad advice from fellow inmates about dismissal of charges for "police misconduct" but also expected that the issue of Dayan's representation and the circumstances surrounding the Rule 11 hearing would be fully ventilated. Since Judge Fitzgerald had presided over the Rule 11 hearing, this Court expected to refer the request to withdraw plea back to Judge Fitzgerald. When the motion was filed there was

ORDER

 

Williams then sought to withdraw his plea, arguing that he received ineffective assistance of counsel because his attorney failed to bring a suppression motion based upon, among other things, outrageous government action. Docket No. 122. The Court denied this motion, Docket No. 127, and held a sentencing hearing at which time Williams was sentenced to serve 135 months of imprisonment. Docket No. 131.

Williams appealed. While the appeal was pending, Williams brought a pro se motion to set aside or vacate his sentence pursuant to 28 U.S.C. § 2255, Docket No. 151, that was denied without prejudice because of the pending appeal. Docket Nos. 152; 153. He then voluntarily dismissed his appeal, Docket No. 154, and brought a new § 2255 petition, which is currently pending. Docket No. 155. In this petition Williams raises a laundry list of concerns, many of them waived by his plea of guilty, and others resolved at earlier hearings before this Court. The Honorable John Roberts, United States Magistrate Judge, to whom this matter was initially referred, addressed each of these claims in a series of reports and recommendations. *See, e.g.*, Docket Nos. 172; 197; 225.[6] Judge Roberts recommended that each of these claims be rejected and Williams's motion denied. The Court reviewed the record de novo and exercised its independent judgment. This Court agreed with Judge Roberts as to most of Williams's contentions. The claims that Williams was denied needed discovery and that the Government engaged in outrageous conduct are frivolous. The Court

---

no mention of Dayan coercing or misleading Williams or any claim that the plea agreement provisions for cooperation had been violated by Dayan or the Government. Instead, Williams essentially argued that his plea was not knowing, intelligent and voluntary because he had a "get out of jail free card" that Dayan did not explain to him or use to have the charges against Williams dismissed. *See* Docket No. 122. Since Judge Fitzgerald was unavailable to consider the motion and the motion did not involve anything that had occurred at the Rule 11 hearing, this Court considered and denied the motion finding it without merit. Docket No. 127.

[6] Initially Williams appeared pro se. Judge Roberts first determined to resolve the motion on the basis of the Rule 11 hearing before Judge Fitzgerald without an evidentiary hearing. *See* Docket No. 172. At Williams's urging, Judge Roberts reconsidered and determined to hold an evidentiary hearing. Judge Roberts appointed Linda Webb to represent Williams at that hearing.

ORDER

previously considered the essence of these claims in connection with Williams's motion to substitute Mr. Wonnell. See Docket Nos.118; 210; 121.[7]

One claim that was not previously brought is Williams's claim that his initially retained lawyer, Mr. Dayan, rendered ineffective assistance of counsel by (1) coercing Williams into a) pleading guilty, and b) perjuring himself at the Rule 11 hearing before Judge Fitzgerald, and (2) failing to adequately represent him in negotiations with the Government over a possible downward departure for substantial assistance. See generally United States v. Leonti, 326 F.3d 1111, 1117 (9th Cir. 2003).[8] The Honorable John Roberts, United States Magistrate Judge, to whom this matter was initially assigned, held an evidentiary hearing on this claim. See Docket No. 187 (Trans.). At the hearing, Dayan and Williams testified. After procuring written final arguments from the parties, Judge Roberts recommends that the new petition be denied. See Docket Nos. 197 (Initial R&R); 203 (Final R&R). Williams objected to Judge Roberts's recommendation. Docket No. 199.

---

[7] At Wonnell's request, the Court sealed the hearing on substitution which was conducted *ex parte*. In attendance were Wonnell and John Pharr, an experienced trial attorney whom the Court appointed to assist Williams in his efforts to replace Wonnell. Since the reasons for sealing the hearing no longer exist, the hearing is ordered unsealed.

[8] It is not completely accurate to say that Williams's claims against Dayan had not been previously raised. They were raised when Williams fired Dayan and when he sought to substitute a new appointed attorney for Wonnell. This Court appointed an attorney to investigate whether Williams had a legitimate claim against Dayan and whether Wonnell had denied Williams effective counsel by failing to raise those issues. See Docket No. 118. John Pharr was appointed. Pharr assured the Court at the *ex parte* hearing that he had investigated all of Williams's complaints, had interviewed Dayan and Wonnell, and was prepared to represent Williams at the hearing. It was clear that the only non-conclusory complaint Williams had was that first Dayan and then Wonnell had failed to seek dismissal of the charges on the ground of outrageous police conduct. See Docket No. 210 (Trans.). The Court made it clear to Williams that in order to bring that motion Wonnell would need to first successfully move to withdraw Williams's plea. Wonnell did move to withdraw the plea on the ground of outrageous police conduct, and the Court denied the motion on the ground that it was without merit. Docket No. 127. From a consideration of the various hearings, it is clear that neither Wonnell nor Pharr, both of whom are experienced criminal defense attorneys, thought that there was any merit in Williams claim that the rule 11 proceeding was flawed, or that the plea was in anyway coerced or the result of Williams being misled about sentencing concessions. This would explain Pharr's reticence at the hearing to substitute, and Wonnell's limiting the motion to set aside the plea to Williams's claim of outrageous police conduct.

ORDER




Where, as here, a suppression motion has been assigned to a magistrate judge, this Court may not reject the magistrate's credibility findings without holding a new evidentiary hearing. *United States v. Ridgway*, 300 F.3d 1153, 1157 (9th Cir. 2002 ). Where there are factual disputes in the record, a factual finding is not only clearly erroneous, it is objectively unreasonable if the fact finder does not discuss and resolve all the conflicts in the evidence and consider any possible corroborating evidence for the position rejected. *See Taylor v. Maddox*, 366 F.3d 992 (9th Cir. 2004) (expanding factual review of trial court decisions in conformity with rules previously developed in social security cases and immigration cases).[9]

A review of Williams's objections at Docket No. 199 suggested to this Court that he relied heavily on parts of his testimony that were implicitly, if not explicitly, contradicted by Dayan. While it might have been possible to infer findings of fact on this conflicting testimony (possibly invoking the rule that if a person is willfully false in one part of his testimony, the fact finder may distrust his testimony in other particulars), that possibility might simply subject this case to future remands under the new *Taylor* doctrine. 366 F.3d 992. Dayan seemed to testify that in order to cooperate, Williams would have had to convince the DEA that he was truthfully telling all he knew about his drug sources, though it did not matter who they were. In contrast, Williams's position seems to be either that he had no drug sources or that he had no information about anyone who had furnished him drugs and could only provide information that he picked up in jail from a "Mexican," not otherwise identified, who tried to "set him up."

This Court therefore asked Judge Roberts to review the record and make further factual findings regarding twelve issues about which it appeared that Dayan and Williams's testimony was in direct conflict. The twelve issues were as follows:

---

[9] This Court had previously assumed that the "clearly erroneous" rule under which trial court fact findings are reviewed is much more deferential then the approach taken in immigration and social security cases which appeared to this court as the appellate court essentially substituting its judgment for that of the hearing officer. *Taylor v. Maddox*, 366 F.3d 992 (9th Cir. 2004), was the first case in which this expanded review was utilized in evaluating the fact findings of a trial judge which was particularly troubling because the issue arose in the midst of a state habeas case, 28 U.S.C. § 2254, where review should be more deferential, not less.

ORDER

 

1) Was Williams testifying truthfully and accurately when he testified that he told Dayan prior to the Rule 11 proceeding that his meetings with DEA representatives and an assistant United States attorney were "hostile"?

2) Was Williams testifying truthfully and accurately when he testified that he told Dayan prior to the Rule 11 proceeding that he did not know anything about Hatton and that he would have to lie in order to satisfy the DEA that he was cooperating?

3) Did Williams testify truthfully and accurately when he testified that he told Dayan that the only information he had to give the DEA was information about a Mexican he met in jail, long after the conspiracy in this case, who tried to "set him up"?

4) If the answer to 3 is yes, did Dayan tell Williams that this information would be sufficient to earn him a downward departure?

5) Did Dayan inform Williams prior to signing the plea agreement and affirming it at the Rule 11 hearing that a departure would be based only on new information, previously unknown to the Government, which would support and lead to criminal indictments, prosecutions, and convictions?

6) Did Williams tell Dayan just prior to the Rule 11 hearing that he (Williams) did not wish to plead and had attempted to hire Phillip Weidner to take the case to trial?

7) Did Williams enter his guilty plea in the reasonable belief that he would obtain a departure to approximately a five-year (60 month) sentence by informing the DEA of his conversations with the Mexican he met in jail?

8) If Williams had known the true facts, whatever they are, would he have rejected the plea and gone to trial?

9) Did Williams at any time entertain the intent to cooperate in good faith with the DEA in the hopes of obtaining a lesser sentence?

10) Did Dayan testify truthfully when he testified that Williams initially told Dayan a false story regarding Williams's involvement, in which story Dayan invested his and his paralegal's time in preparing to present it at trial—preparation that only stopped once Williams apparently learned that an absent co-defendant had been arrested at which time Williams, for the first time, told the truth about his involvement and begged for a plea agreement?

11) Or, conversely, did Williams testify truthfully when he testified that he expected to go to trial and that Dayan, not Williams, lost confidence in the trial option when Dayan read the prosecutor's trial brief?

12) Did Dayan coerce Williams into pleading guilty?

The Order provided that whether to take further testimony or allow additional argument was left to the discretion of Judge Roberts. Docket No. 206. Judge Roberts elected to hold a supplemental evidentiary hearing. *See* Docket No. 217 (Trans.). After considering the entire record

ORDER

 

in light of supplemental briefing from the parties, Judge Roberts issued his Final Report and Recommendation. Docket No. 225. In the Final Report and Recommendation, Judge Roberts again recommends that the motion be denied. *Id.* The Court has reviewed that recommendation, re-examined the entire record de novo and exercised its independent judgment. The Court concludes that Judge Roberts has correctly analyzed the facts and applied the law and therefore his recommendation will be accepted with a few additional remarks.

## DISCUSSION

When looking at the history of this case from its beginning to the present, certain things stand out. First, Williams is guilty of the offense to which he plead. Williams arranged to purchase cocaine in kilo quantities in California and recruited Sarah Lee Williams and John Makules to assist him. Sarah Lee Williams brought eight kilos to Anchorage where she was intercepted at the airport and immediately agreed to cooperate in the prosecution of Williams. With Sarah Lee Williams's assistance John Makules was caught and also agreed to help the authorities. Williams was initially stopped that same evening and then released. An indictment was returned, and trial was scheduled. Williams initially expected to beat the rap. He is personable and quite intelligent. Using information obtained through discovery, he fabricated a complete explanation for the testimony he expected Sarah Lee Williams to provide taking courage from the fact that her reputation was not the best and he expected that she would be savaged on cross-examination. Williams's claims of innocence and corroborative story was so convincing, and Sarah Lee Williams's reputation so bad, that Mr. Dayan, Williams's retained attorney, thought the case was winnable. Makules had disappeared and his testimony was not expected. Unfortunately for Williams, Makules was arrested in California and returned to Alaska. Once Williams, who was out on bail supposedly in the custody of a third party custodian, learned that the charges against Makules had been dismissed he knew that Makules would be testifying against him and, as they say in the movies, the jig was up. It is clear that it was Williams and not Dayan who panicked and Williams who sought a plea on the best terms Dayan could arrange. It is also clear that Williams did not want to face both Sarah Lee Williams and Makules in front of a jury. Unfortunately, given the quantity of cocaine attributable to Williams, his only hope for a reduced sentence was to cooperate with the Government in

ORDER

 

prosecuting his source. Williams's dilemma was that he did not want to cooperate but he also did not want to go to prison for the term dictated by the sentencing guidelines. Williams therefore temporized. He agreed to plead guilty and promised to cooperate—without any intention to do so—in the hope that he could fool the authorities into giving him a break. Williams is an ardent manipulator, and he is ready to tell any lie that he thinks will aid him. He is, in modern parlance, integrity challenged.

There was one other possibility with which Williams was toying, the so-called get out of jail free card. Williams had done a great deal of independent research and discussed his case with other drug dealers in jail. His research and consultations led him to conclude that the administration of justice is a game in which the Government and drug dealers compete. In every case, Williams reasoned, the court must first try the police before the jury may try the defendant. If the defendant plays his get out of jail free card—by showing police misconduct—he wins and goes free. If the get out of jail card is trumped, then the case goes to trial, or the defendant pleads on the best terms he can get.

There is some truth in Williams's theory. The problem is that police misconduct generally occurs in the context of 1) unlawful searches and seizures in violation of the Fourth Amendment; 2) entrapment; and 3) in the rarest of cases, some outlandish action that an appellate court considers so extreme that dismissal of the charges is warranted. In this case the evidence against Williams did not derive from the search of his property or the seizure of his person. The evidence was the testimony of Sarah Lee Williams and John Makules, and the drugs seized from Sarah Lee Williams. Williams clearly was not entrapped. He originated the plan to import cocaine before the police were aware of it. Thus Williams sought to prevail on the argument that when he was initially stopped by the police the contact went beyond a Terry Stop and matured into a full arrest. *See Terry v. Ohio*, 392 U.S. 1 (1968). Williams goes on to argue that Federal Rule of Criminal Procedure 5 required the police to take him before a magistrate judge within 24 hours, and that this was not done. Thus, Williams argues, the charges should be dismissed and he should be set free to return to drug dealing. The main problem with this argument is that Williams was let go after he was stopped. The purpose of taking someone before a magistrate is to protect them when they are detained and assure them a

ORDER

 

timely bail hearing. Since Williams was not detained at that time he had no need for a bail hearing. Further, even if it is true that the police rummaged through Williams's personal belongings as he complains, this action apparently did not lead to any worthwhile evidence against him. Thus there was no basis for dismissal of the charges. Williams never had a get out of jail free card, and none of his many attorneys was ineffective for failing to raise the issue in a more timely way.

It is further clear that Dayan did not coerce or mislead Williams into pleading guilty. Williams never relied exclusively on Dayan's advice. He discussed it with at least two other attorneys, Sydney Billingsley and Phillip Weidner before Williams entered his plea. Judge Roberts correctly rejected Williams's testimony that Williams told Dayan that Williams had hired Mr. Weidner and did not wish to go forward with his plea. Williams's testimony is not worthy of belief.

Dayan did not prejudice Williams in Williams's dealings with the Government. It is clear that Williams never intended to cooperate with the Government. He sought unsuccessfully to fool them, and when that did not work, sought to manipulate the system by seeking to fire his successive attorneys and by pressuring his attorneys to file frivolous motions. Even if Dayan had omitted some act regarding cooperation, Williams was not prejudiced. Even after Dayan was fired and Wonnell was substituted, the Government was still willing to listen to Williams provided that he had something to contribute. The reality is that Williams never intended to cooperate. He played games with the authorities, and he is now playing games with the Court. Unfortunately for Williams, the games are now over.

In order for Williams to appeal the denial of his § 2255 motion, he must obtain a certificate of appealability from either this Court or a motion's panel of the Ninth Circuit Court of Appeals. *See* 28 U.S.C. § 2253(c)(1)(B). In order to grant the certificate this Court must find that jurists of reason could differ as to whether Williams made a substantial showing of the violation of his constitutional rights. In context, a violation of his constitutional rights turns on whether he has shown that he was prejudiced by the representation he received from Dayan in connection with his plea, and by extension in connection with the manner in which cooperation was handled. 28 U.S.C. § 2253(c)(2); *See Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *Mayfield v. Woodford,* 270 F.3d

 

915, 922 (9th Cir. 2001) (en banc).[10] Williams has made no such showing. Williams relies on *United States v. Leonti*, 326 F.3d 1111 (9th Cir. 2003). The case is distinguishable because there Leonti claimed that his attorney failed to adequately represent him during the pre-trial proceedings where cooperation was under consideration. The Ninth Circuit faulted the trial court for failing to hold an evidentiary hearing. In this case two evidentiary hearings were held. The Magistrate Judge considered the credibility of Williams and Dayan, and chose to believe Dayan and disbelieve Williams. The Magistrate Judge fully considered the testimony of all the witnesses and concluded that Williams had never attempted to cooperate in good faith with the Government. Under the circumstances jurists of reason could not differ regarding either the quality of the representation Williams received or the possibility he was prejudiced by anything Dayan did or failed to do.

**IT IS THEREFORE ORDERED:**

The motion pursuant to 28 U.S.C. § 2255, **Docket Nos. 155** and **161**, is **DENIED**. No certificate of appealability will issue at this level of court. Should Williams wish to appeal he must file a request for a certificate of appealability with the Ninth Circuit Court of Appeals within the time for an appeal.

Dated at Anchorage, Alaska, this _____ day of December 2004.

  _/s/ James K. Singleton_
  JAMES K. SINGLETON, JR.
  United States District Judge

---

[10] In determining whether to grant a certificate, the Court must separately consider each issue that the movant wishes to argue. *Mayfield*, 270 F.3d at 922. Williams's claims, other than ineffective assistance of counsel, are so frivolous they do not justify further consideration. The Court has therefore limited its attention to the claim of ineffective assistance of counsel with particular reference to Williams's discussions with the Government regarding potential cooperation.